

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: March 31, 2010**

_____
**JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE**
_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRCT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| In re: | § | CASE NO. 09-10748 |
| | § | |
| JOHN BALDWIN WHATLEY and | § | CHAPTER 7 |
| GLENDA JANE WHATLEY, | § | |
|     Debtors. | § | |

| | | |
|---|---|---|
| CHARLES F. MCVAY, | § | ADV. NO. 09-01066 |
| UNITED STATES TRUSTEE, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JOHN BALDWIN WHATLEY and | § | |
| GLENDA JANE WHATLEY, | § | |
|     Defendants. | § | |

### MEMORANDUM OF OPINION AND ORDER
### DENYING OBJECTION TO DISCHARGE
### AND OBJECTION TO EXEMPTIONS

On March 22, 2010 came on to be heard the objection by the United States Trustee to the discharge of the Debtors, John Baldwin Whatley and Glenda Jane Whatley. The trial was

consolidated with the trial of the objection to Debtors' claimed exemptions filed by the Chapter 7 Trustee, C. Daniel Roberts.[1]

# FACTS[2]

Mr. Whatley is 77 years of age and retired. Mrs. Whatley did not testify, but she appears to be of similar age. No evidence was introduced concerning the occupation in which Mr. Whatley was engaged, but he did not show much familiarity with business matters.

Mr. and Mrs. Whatley (the "Debtors") filed for relief under Chapter 7 of the Bankruptcy Code on March 27, 2009. In their schedules, they listed their homestead at 106 Red Bud Drive, Spicewood, Texas, which consisted of two lots (the "Homestead"). They valued the homestead at $135,000 and noted that there were no liens on it.

Apparently in 2006 or 2007 (the dates are not clear from the evidence), the Debtors decided to engage in the construction of homes for resale. The evidence in this case indicates that they either owned or acquired two lots – Nos. 64 and 65 in the Edgewater Beach, Sec 2 Addition in Travis County Texas.[3] These lots are in addition to their Homestead.

**Lot 65:** In their schedules, the Debtors listed 1217 Overlook Circle, Spicewood, Texas, which was subject to a lien of Horizon Bank for $196,000. The Debtors valued the lot at $170,000. The schedules and evidence do not reflect if there were any improvements on the lot, and if so, the nature of them. On May 15, 2009, Texas Country Bank filed a motion to lift stay on Lot 65 in order to foreclose on a construction loan and deed of trust signed by both Debtors on July 11, 2007.[4] The motion recited that in their schedules, the Debtors had improperly listed the lien on this property as being held by Horizon Bank. The automatic stay was relieved to allow Texas Country Bank to foreclose on Lot 65 on June 5, 2009.[5]

**Lot 64:** On July 11, 2007, the Debtors executed a Construction Loan Promissory Note to Horizon Bank for $208,000. The note was secured by a Deed of Trust on Lot 64. The street address was given as 1219 Overlook Circle, Spicewood, Texas. Interest was payable monthly and the principal became due on July 11, 2008. On August 6, 2008, the maturity of the note was extended to November 11, 2008. The Deed of Trust was foreclosed upon on January 6, 2009.[6] The sole bidder was Horizon Bank, which bid $123,500 for the property.

---

[1] The Trustee's Objection to Debtor's (sic) Exemption Claims is item #11 on the docket of the Bankruptcy Case. This court has jurisdiction in this matter under 28 U.S.C. §1334 (a) and (b), 28 U.S.C. § 157(a) and (b), and the Order of Reference of Bankruptcy Cases and Proceedings by the United States District Court for the Western District of Texas, August 13, 1984. These are core proceedings under 28 U.S.C. §157(b)(1) and (2)(B) and (J).

[2] The court adopts the Summary of Facts contained in the Joint Pre-Trial Order submitted by the parties.

[3] For convenience, the lots will be referred to by their numbers in this opinion. The evidence does not reflect whether these two lots were the only two the Debtors attempted to develop. In argument, Debtors' counsel referred to "one house that worked out well," but there is no evidence to support that statement.

[4] Case docket item #7.

[5] Case docket item #14

[6] Debtors' Exhibit 1.

2

Mr. Whatley testified that some time prior to the foreclosure sale, he had a contract for what he referred to as a "short sale" of Lot 64 to Donald J. Heckert and Cynthia A. Heckert (the "Heckerts") for $182,000.[7] He knew that the debt to Horizon Bank was more than that amount, but he felt, at that time, he had sufficient funds to make up the difference. He did not personally contact the bank concerning the proposal, but relied upon the statement of his real estate broker that the bank had rejected the contract.

By Special Warranty Deed dated February 25, 2009, Horizon Bank conveyed Lot 64 to the Heckerts.[8] The cash consideration is not recited, but the Heckerts executed a note for $168,000 to Sterling Bank. The note is secured by a Deed of Trust on Lot 64.[9] The Deed of Trust recites that the note is due in six months.

On March 3, 2009, Horizon Bank sued the Debtors in the 201st Judicial District Court of Travis County, Texas.[10] Attached to the state court petition is a copy of a demand letter dated November 17, 2008 which asserts that the amount due on the note is $201,482.15. There is no evidence that the Debtors contacted the bank officers whom they were requested to contact in that letter. The state court petition recites the $123,500 bid at the foreclosure sale and seeks damages of $84,500 plus all costs and expenses of collection. It is noteworthy that the amount claimed in the state court suit is the difference between the price Horizon Bank bid at the foreclosure sale and the original $208,000 principal of the note. The state court petition does not give any credit for the lesser amount mentioned in the demand letter, nor for the funds Horizon Bank received from the resale of the property.

Debtors' Exhibit 5 is a statement from the Travis County Central Appraisal district showing the Heckerts as the owners of Lot 64 and giving it an appraised value of $277,038 as of July 15, 2009.

The only claim filed in the Bankruptcy Case is by Horizon Bank in which it asserts the amount due at the date of the filing of the case was $107,217.60.

All of the testimony about a house under construction appeared to be about the house on Lot 64. Mr. Whatley stated that it was not finished, even when there was a contract to sell it to the Heckerts. When he was told that the bank would not approve that contract, he went to the house and retrieved a number of appliances and plumbing items, most of which were still in the original boxes, and returned them for credit to Lowes Home Improvement Company. He stated those items had been purchased on credit with the right to return them within ninety days for full credit and that he returned them within that time.

Horizon Bank did not join in the objection to the discharge and was not represented at the hearing on this matter.

---

[7] The contract was not introduced into evidence.
[8] Debtors' Exhibit 2.
[9] Debtors' Exhibit 3.
[10] Debtors' Exhibit 4.

3

**The Homestead:** On January 8, 2002, the Debtors executed a note to Countrywide Mortgage Company in the principal amount of $62,700. The note was secured by a deed of trust on their homestead. The note called for monthly payments of $529.10 and the balance was due in full on January 1, 2017. Regular monthly payments were made until November 18, 2008 when Mr. Whatley paid off the note in full by paying $41,102.70 from his account at American Bank of Texas, N.A. At the meeting of creditors, Mr. Whatley testified that he paid off the note to "save his home," but he acknowledged that the Homestead was not posted for foreclosure when he paid it off. The Debtors did not disclose the payment to Countrywide in their Statement of Financial Affairs.

**Investment Account:** The Debtors had an investment account with American Century Investments. The December 31, 2007 value of that account was $56,766.93. The account depreciated rapidly with the fall of the market. The Debtors closed that account on November 10, 2008 and received $40,230.74.[11] Mr. Whatley said he closed that account to stop the loss of the money and to put it into something safer. He used the proceeds of that account to pay off his homestead.

**Gifts to the Debtors' Daughter:** Sometime in August 2008 (the exact date was not disclosed in the evidence), the Debtors gave $10,000 to their daughter. That gift was not disclosed in their initial schedules. Mr. Whatley testified that the gift was to help the daughter save her home. In support of that, the Debtors introduced their Exhibit 6, which is a letter to their daughter from Wells Fargo Home Mortgage pointing out that she is in arrears in the amount of $ 6,942.35. A second part of that exhibit is another letter from Wells Fargo Home Mortgage to the Debtors' daughter dated August 10, 2008 concerning the delinquency, but not containing an amount.

The Debtors gave their daughter another $5,000 in October 2008 to help her pay her bills.

**New Car:** Mr. Whatley stated that their old car had 156,000 miles on it and needed major costly repairs to the air bag system. In January 2009, instead of doing those repairs, they traded in their old car and purchased a 2008 Toyota Camry. They paid some cash down and financed the balance at Security Service FCU. Their schedules list the credit union as secured on the vehicle which they valued at $22,000 and showed the lien at $10,000. They reaffirmed the debt to the credit union on July 2, 2009.[12] The credit union did not file a claim in the Bankruptcy case.

**Home Repairs:** In July 2008, the Debtors had a major water leak in their home. On July 29, 2008, they paid Spicewood Plumbing $452.50 for repairs. The repair invoice reads: "Service call/parts and Labor—repair leak in wall, ¾" & ½" copper manifold in wall behind cabinet. (Leak caused damage to floor and found mold due to leak)."[13]

At the meeting of creditors, Mr. Whatley testified that shortly before they filed their petition, the Whatleys spent $3,427.35 for flooring in the Homestead and $4,955.77 for interior

---

[11] Debtors' Exhibit 9.
[12] Case docket item # 22
[13] Debtors' Exhibit 7.

4

painting in the Homestead. When asked why he spent all this money before filing bankruptcy, Mr. Whatley testified that he knew "I would not have it after I filed bankruptcy, so I spent it." At trial he explained that his attorney told him that any money in the bank account on the date of filing would go to the trustee.

**Mattress:** At the meeting of creditors, Mr. Whatley testified that he bought a bed for $3,400 two days before they filed for bankruptcy. At the hearing, he said it was a mattress. He said he and Mrs. Whatley had back problems and needed a particularly good mattress. In support he introduced Debtors' Exhibit 8, which is a report of back surgery he had in February 2008. He stated they tried other mattresses which did not help, so had to purchase the one in question.

### POSITIONS OF THE OBJECTORS

**Objections to the discharge:** The United States Trustee objects to the discharge of the Debtors under § 727(a)(2)(A) and (a)(4)(A).

§ 727(a)(2)(A) denies the discharge to a debtor who, "with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed . . . property of the debtor, within one year before the date of filing of the petition."

The United States Trustee asserts the Whatleys should be denied a discharge because within one year prior to bankruptcy, they used non-exempt funds to prepay the loan on the Homestead, made gifts to their daughter, and bought unnecessary goods and services. The complaint states: "Mr. Whatley's testimony that he knew he wouldn't have the funds after bankruptcy manifests an intent to hinder, delay, or defraud the Trustee and the creditors of this estate."

§ 727(a)(4)(A) denies the discharge to a debtor who "knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."

The United States Trustee also asserts that the Whatleys should be denied a discharge, because by signing the Statement of Financial Affairs under penalty of perjury, they made a false oath by omitting the payment to Countrywide Mortgage and the gifts to their daughter. Again, the Trustee points to Mr. Whatley's testimony that he knew he would not have the funds after bankruptcy. The Trustee points out that at the meeting of creditors, Mrs. Whatley testified that they had worked on the bankruptcy schedules for two weeks.

**Objection to exemptions:** As permitted by the Bankruptcy Code, the Debtors claimed the Texas exemptions. The Chapter 7 Trustee objects to some of the exemptions under both federal and state law.

§ 522(o)(4) denies the debtor an exemption in a homestead to the extent that within the 10 years prior to filing the bankruptcy the debtor used non-exempt property to enhance the

5

exemption "with the intent to hinder delay or defraud a creditor." Stated another way, the Chapter 7 Trustee is seeking a lien on the Debtors' homestead to the extent of the $41,102.70 that the Debtors used to pay off the lien on the homestead.

Under § 42.004 of the Texas Property Code, if "a person uses the property not exempt under this chapter to acquire, obtain an interest in, make improvement to, or pay an indebtedness on personal property which would be exempt under this chapter with the intent to defraud, delay, or hinder an interested person from obtaining that to which the interested person is or may be entitled, the property interest, or improvement acquired is not exempt from seizure for the satisfaction of liabilities."

The Chapter 7 Trustee seeks to deny the Debtors' claim of exemption to the 2008 Toyota because they used $15,000 from a credit union account to pay down on the vehicle.[14] A similar argument is made with respect to the $3,462.92 paid to purchase the mattress (furniture in the Trustee's objection).

**BURDEN OF PROOF**

**Objection to the discharge:** Federal Rule of Bankruptcy Procedure provides: "At a trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the objection."

> Some courts have required that the plaintiff prove its case by "clear and convincing evidence." However, since the Supreme Court's decision in *Grogan v. Garner* specifying the burden of proof in a dischargeability proceeding under section 523(a), courts have adopted the position that the burden of proof under section 727(a) is proof by a preponderance of the evidence.

6 *Collier on Bankruptcy,* 16th ed. ¶ 727.14[7] (9.2008).

**Objection to Exemptions:** The party objecting to an exemption has the burden to prove that the exemption was not properly claimed. Federal Rule of Bankruptcy Procedure 4003(c). The preponderance of the evidence standard applies to actions brought under § 522(o). *4 Collier on Bankruptcy,* 16th ed. ¶ 522.08[5][b] (12/2009). It should also apply to actions brought under § 42.004 of the Texas Property Code.

**DISCUSSION**

**False Oath:** False oaths sufficient to justify a denial of discharge under § 727(a)(4)(A) include a false statement or omission in the debtor's schedules. *Beaubouef v. Beaubouef (In re: Beaubouef,)* 966 F2d 174, 178 (5th Cir 1992). To prevail, the United States Trustee has the burden of proving that (1) the Debtors made the statement under oath; (2) the statement was

---

[14] The figure of $15,000 comes from the Trustee's Objection. That amount was not contained in the Stipulation of Facts nor was it mentioned in the testimony. Mr. Whatley testified only that he paid some cash in connection with the purchase of the vehicle.

6

false; (3) the Debtors knew the statement was false; (4) the Debtors made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Id.*

There is no evidence concerning the preparation and signing of the Statement of Financial Affairs and Schedules other than Mrs. Whatley's statement noted above. There is no question in this case that the statements (in this case, the omissions) were made under oath and were false, in that the Debtors did not disclose the gifts to their daughter and the payment to Countrywide to pay off the lien on their Homestead. On June 8, 2009, the Debtors filed an amended first page to their Statement of Financial Affairs where they listed the gifts to their daughter. No explanation was made why they did not, at the same time, show the payment to Countrywide.

The United States Trustee asserts that the Debtors should have listed the payment to Countrywide in response to question 10 of the Statement of Affairs. That question requires a debtor to "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

The court recalls no evidence adduced on this point. The United States Trustee states the fact that Mr. Whatley testified he knew he would not have the money after bankruptcy, indicates a knowing and fraudulent intent to make a false oath is this case. The court does not agree for several reasons: (1) to most laymen, the transfer of "property" means tangible property; not cash; (2) the Debtors could well have thought that paying off the homestead was within the ordinary course of their financial affairs; and (3) the Debtors could have logically concluded that paying off a debt was not a "transfer." The court finds that the Debtors did not know that the failure to list the payment to Countrywide was a false statement and that their failure to list that payment was not made with fraudulent intent.

With respect to the payments to the daughter, the court finds that omission inadvertent and not material. It was not knowingly false and was not done with fraudulent intent.

In sum, the Untied States Trustee's complaints under §727(a)(4)(A) are denied.

**Balance of the complaints:** The United States Trustee's complaints under § 727(a)(2)(A) and the Chapter 7 Trustee's objection to exemptions, all hinge on whether these Debtors intended to "hinder, delay, or defraud a creditor or an officer of the estate."

There is no evidence tying Mrs. Whatley to any of these actions, so the complaints and objections are denied as to her.

Certainly no debtor is going to admit that he/she intended to hinder, delay or defraud the creditors, so the intent has to be inferred from the debtor's acts and the circumstances.

In response to question 2 of the Statement of Financial Affairs, the Debtors showed that their income from 2007 came from dividends, capital gains, a pension, and social security. In 2008, their income came from dividends (greatly reduced from 2007), an IRA, the pension, and

7

social security (also reduced from 2007). The pension of $31,856 is by far the largest source of their income.

Faced with the declining income from his investments and thus the prospect of lesser income in the future, it is not surprising that Mr. Whatley cashed in the investment account (which, as noted above, had already decreased by approximately $16,000) and used the money to pay off the lien on the Homestead. The natural thing for every person is to want to keep "a roof over his head" and by paying off the lien his monthly payment obligation to Countrywide was eliminated. The court finds there was no fraudulent intent in paying off the lien to Countrywide.

The payments to the daughter are clearly understandable. What parent would not help out a daughter with a crisis? Certainly those payments were not made with a fraudulent intent.

The repairs on the house and the purchase of the mattress are a bit more troubling since they were made on the eve of bankruptcy. However, the report from the plumbing company shows extensive damage to the floor and walls, so the repairs were made to preserve the homestead, not with intent to defraud the creditors. The court accepts Mr. Whatley's testimony on the mattress for the same reason.

Throughout this proceeding – at the meeting of creditors and at trial – Mr. Whatley has been open and honest. His testimony is credible. He did not spend money on luxuries, take trips, or make unnecessary purchases. He used the money to protect his home and family. The court cannot infer fraudulent intent from that.

In sum, the court cannot find that Mr. Whatley took the described actions with intent to hinder, delay, or defraud the creditors of an officer of the estate.

### CLOSING COMMENT

Another matter, which is technically not a factor in this case, but which the court feels compelled to mention is the fact that this is a one creditor case. Horizon Bank is the only creditor to file a claim and the only party which would profit by having the discharge of these Debtors denied. It could be argued that Texas Country Bank would also benefit from the denial of the discharge, but there is no evidence that the bank suffered a deficiency upon its foreclosure. Texas Country Bank did not file a claim in this bankruptcy and has apparently moved on to other matters. The only other creditor listed in the Debtors' schedules was the credit union which received a reaffirmation on its vehicle loan.

Horizon Bank, on the other hand, filed a claim in this bankruptcy case. It did not participate in the objection to the discharge in any manner. Does that indicate a complete lack of interest on its part or does it simply want the United States Trustee and the Chapter 7 Trustee to do the dirty work for it?

Had Horizon Bank accepted the short sale, its loss would have been approximately $20,000 or, if expenses of the sale were included, perhaps as much as $30,000. Mr. Whatley testified that he thought he had enough money to pay the difference, but at the very least, he was

8

willing to pay as much as he could. Perhaps he could have worked out a monthly payment for the balance and avoided the bankruptcy. The lack of communication between Mr. Whatley and the bank is tragic and shows his lack of business acumen. He did not take the steps to visit with a senior bank officer about the matter.

Horizon Bank's claim in this bankruptcy is for $107,217.60. That claim is based on the difference between the foreclosure sale price of Lot 64, $123,500, and the balance owing on the loan at the time of foreclosure $203,974.22 and fees of $26,743.38. It is to be noted that the suit filed in state court based the claim on the original principal amount of the note, rather than the balance due at foreclosure. Although an itemization of the fees is given, at first blush, the fees seem high.

However, Horizon Bank does not give credit for the amount it received upon the resale of the property. To that extent, at least, Horizon Bank is seeking a windfall from these Debtors. Bankruptcy court is a court of equity, and the court is reminded of one of the maxims of equity: "He who seeks equity, must do equity." It would certainly be inequitable to allow Horizon Bank to make a windfall profit from the foreclosure of the Debtors' property.

## ORDER

For the foregoing reasons, it is **ORDERED** that:

- The United States Trustee's Complaint Objection to Discharge of Debtors Pursuant to 11 U.S.C. §727(a)(2)(A) and (a)(4)(A) is in all things, DENIED.

- The Chapter 7 Trustee's Objection to Debtor's Exemption Claims is in all things, DENIED.

# # # #

9